Case number 14-8001, Enrique, District of Columbia, a Municipal Corporation Petitioner. Ms. Ali Collin for the petitioner, Ms. Rifkin for the respondent. Good morning and may it please the Court. My name is Lauren Ali Collin and I represent the District of Columbia. I would like to reserve two minutes for rebuttal. In Wal-Mart, the Supreme Court held that commonality requires a common contention that is capable of class-wide resolution, such that the validity of the claim or central aspect of it can be resolved in one stroke. And in D.L., this Court applied Wal-Mart to hold that a class cannot be certified based on the allegation that the government has failed to comply with its legal obligations in multiple and discrete ways, rather than through a systemic policy or practice. But that was precisely the class that the District Court certified here. That decision was manifestly erroneous under both Wal-Mart and D.L., thus warranting this Court's 23-F review and, on the merits of the provocateur, the certification decision. I think that I have a problem with the way that you've argued this commonality issue in your brief. The District Court found that of the commonality allegations in the complaint, paragraph 156, paragraphs A through G, found that at least two of those were common questions. You haven't articulated in your brief why those two questions are not common questions. Instead, your brief suggested that the District Court found that those two questions were among kind of like uncommon questions. But you haven't argued that I see in your brief why the District Court was manifestly erroneous in finding that those two questions were common. You haven't cited anything in the record. You haven't even made the argument. Judge Wilkins, the questions that the Court held to be common in its opinion were whether there was a failure to provide transition assistance. And we maintain both before the District Court and in our briefs that the concept of transition assistance is too amorphous. The District Court decision, and this is at JA 1246 and 48, lists 14 different discrete tasks that it thinks are within the ambit of transition assistance. None. The two common questions that the Court found are at JA 1243 and note 58, failure to offer sufficient discharge planning and failure to inform and provide nursing home residents with meaningful choices of community-based long-term care alternatives to nursing facilities. And it said that some of the other alleged common questions in the complaint weren't really sufficient for class purposes. But it looked like the District Court looked carefully at which ones were and said that at least those two were. And you haven't argued anything about why those two aren't and haven't cited anything in the record about why those two aren't. Judge Wilkins, I read footnote 58 as what the District Court thinks that the plaintiffs will have to prove on causation in order to prevail on the merits. What I see is the District Court's analysis of the common questions to actually be at pages 1245 to 1248, specifically on pages 1246 and 47 where she lists all of the different forms of transition assistance that she thinks are part of this case. But the common questions, I think if you're alluding to the ones at the bottom of page 44 and 45 of the JA, are there deficiencies in the District's existing system of transition assistance? If so, what are those deficiencies? And are the proven deficiencies causing unnecessary segregation? We submit that those are not sufficient questions after Walmart and DL because are there deficiencies in the existing system of transition assistance? You have to figure out what the system of transition assistance is. For that, you then go to 1247 and 1248, and you understand that transition assistance is not a unitary concept. It's not been passed upon by a judge. It's not a term of art. Where the District Court got this set of transition assistance tasks was through settlement agreements and prior cases that have never been put to an appellate court by allegations in the plaintiff's complaint, which we submit can't be the body of what transition assistance is here. But at base, the concept is amorphous. And so this amounts to nothing more than the allegation in DL that the District was failing to provide a free and appropriate public education. And that was precisely the allegation. It seems that you're arguing against the straw man that you built. The bottom of 1243, the District Court says, Plaintiff's claims raise the following common questions. Exactly, Your Honor. And it says, if so, what are these deficiencies? What are these deficiencies? And then it says, here are what the plaintiffs would like to prove deficiencies, and it identifies two of the common questions that were in the complaint. It identifies two examples of a set of 14 tasks that could embody transition assistance. And so we think that, much like in DL, the allegation that there was a failure to provide a free and appropriate public education, when that provision actually had four discrete aspects that later became subclasses, the same is true here. Transition assistance includes things like an individualized assessment upon admission. It includes things like assistance with applying for the EPD waiver or money follows the person program. It also just requires something even as general as interagency coordination about housing options. This isn't a case where there is a statutory set of discrete requirements. I understand your argument, but it seems to me that the district court said that if they can prove that you systemically failed at any one of these two, you don't have an effective plan. It might be that there are 14 steps or 14 different things, but you've got to do all 14. And if you can't get past step one, then you don't have an effective plan. Isn't that what the district court has found? I don't read the district court as doing that, but even if that is what the district court was saying, I don't believe that satisfies commonality. What we need is a common policy or practice. So, for example, if we had a practice at the district in applying the money follows the person program, thought eligibility started at 180 days rather than 90, that would be a policy or practice that was capable of class-wide consideration and class-wide relief. However, what we have here is different district agencies that are in charge of different portions of this program, administering it in different ways, and the plaintiff has different objections to how the district is failing. But there's ambiguity as to how to even understand what the district court's opinion found as commonality or not. How could it be manifest error? I don't think there's ambiguity. I think that what the district court found as commonality, the questions that Judge Wilkins has pointed to, are there deficiencies? If so, what are they? Are not common questions because there's not a single answer for all of the plaintiffs. There's not a single answer for any plaintiffs. And if you just dropped the ball across the board on transition assistance, let's just assume hypothetically it wasn't happening at all in any of the 14 ways, because you have a class action that says you have no transition assistance program going here. You're supposed to, and you don't. And it's showing up in all these different corners. Would that work? Yes, Judge Millett. If there was the allegation in this complaint that the district provided absolutely no ability for nursing home facility residents to transition back into the community, that it didn't have the Money Follows a Person program, that it didn't have an EPD waiver, that there was absolutely just complete failure to do anything. Okay. And then let's just assume that most governments aren't going to have abject failure to do anything. And so if the argument is you've been engaged in substantial cross-cutting neglect in this area and you're not remotely doing it at the level the law requires. You're not doing it here. You're not doing it this step. You're not doing it that step. And it's just instead of an abject failure to do anything, it is an across-the-board shortcoming that violates federal law. Could that be a class? That could be with the copyouts that were established in DL. DL, that was the case. The allegation of the class there was that you were failing to provide a free and appropriate public education. So you said it could or couldn't under DL? Well, under DL, what this court said needed to happen was a remand for subclasses. And that was an arm's reach. No, what DL said is remand to consider again whether there can be one class. I mean, subclasses resulted, but that's not what our opinion is at. And DL contemplated that subclasses could fix the problem. So, for example, if... Well, DL also allowed the remand. We don't know what would have happened if the court had certified a unified class. The opinion expressly left that open. Remand for class or subclasses or no class at all. When DL first came up, there was a unitary class. This court held that it was not sufficient. It said it could very well be satisfied by subclasses and remanded for that. We think that if this court were to remand for subclasses, then the court would be put to its burden and the plaintiffs would be put to their burden to determine whether or not there were any systemic deficiencies. But why if you have... So if you have a complete failure, you can have one class. And if you instead have complete 50% failure across all categories? Because we need to know... That can't be a class? Because we need to know the reasons. If there is 50% failure... Why do you need the reasons when it's 50% failure, but you don't need the reasons when it's 100% failure? Because there is no suggestion that these claims can be litigated collectively in a productive fashion if the reason that 50% of these people are failed are for 14 different underlying reasons. Walmart says and DL says that there needs to be a common answer. What if they say the reason you're at 50% failure here is that you're only doing half the job you're supposed to be doing. It's not that there's different reasons for the beneficiaries. The reasons are you are only doing your job, you know, two and a half days a week. The discrete ways in which we are alleged to be manifesting those problems are disparate and individualized to each of the plaintiffs here. I'm just asking you hypothetically. But... I'm sorry. No, you go ahead. The district court said the common question was that the district fails to offer discharge planning, sufficient discharge planning. Now, you say in your brief, and you're arguing, or you're arguing now, well, that's not a common question. You took discovery. You had prudence filed. What in the record shows that that's not a common question as to all of these plaintiffs? If you can't point to something, all we have is your say-so, that it's not a common question, and your say-so is not enough to establish manifest error. Not at all, Judge Wilkins. What we found through discovery and what the district court acknowledged was that there is a system of transition assistance in place. What plaintiffs think is that it's not effective enough. They are not making the allegation that across the board we just don't have this. That is the kind of policy or practice that would give rise to a common question under Walmart and DL. But in the absence of that, there's just this general mandate that the district need to do better. But even the best-run agency may not achieve results 100% of the time. That does not mean that plaintiffs who are aggrieved by that can come in and put together a class action on the basis of that. The district court said failure to inform and provide residents with meaningful choices. So the district court looked at the pleadings that were submitted after discovery when the class certification issues and said it appeared that that's a common question. You're saying, well, it's not a common question, but you're not pointing to anything in the record that says that that's not a common deficiency for at least all of the eight or nine or however many named plaintiffs here. Well, the district court engaged with this at the class certification hearing. And the district court acknowledged that the money follows the person program that transitions people back into the community, that the EPD waiver transitions people back into the community, that there are programs in place that benefit putative members of this class in such a way that there's not a common question capable of a common answer. But beyond that, the district court failed to grapple with a very real problem, which we mentioned in our briefs and I'm happy to discuss here, which is that there is a significant causation question as to the class, which defeats commonality as well. Well, the district court grappled with that. It acknowledged it, found it enough here to go forward with class certification, but acknowledged it may well be a merits issue. Respectfully, Your Honor, in addressing commonality, the district court really gave it short shrift. It said, I'll deal with this later in a footnote. And then the typicality section of the opinion said, oh, well, I guess that's a merits question. I don't think that's entirely fair. The district court went through rounds and rounds here on making them refine their class action definition in part for that very reason, as I understood the history of it, and acknowledged that that was a close call. And so they acknowledge it's a close call on causation and the whole thing may not hold together for the entire case, but at this preliminary stage, this articulation of this class action, as amended by the district court, gets out of the starting gate. And, again, I know you disagree, but that seems almost the sort of incremental marginal question that we wouldn't normally label manifest error. Well, respectfully, I don't think it's a marginal question, given that it was 297 of 355 residents pulled and nearly all of the named plaintiffs here articulated that the lack of available housing was what was preventing them from going back into the community. And that is something that the district court clearly acknowledged, that the district has no obligation to provide, and that the court could not order the district to provide. Suppose there was a claim that there's a failure to provide information in particular, there are these five pieces of information that should be provided to each of the people in the class, and it listed those five specific pieces of information. Is that kind of claim appropriate for class treatment? I think it would be. If there was a policy or practice or a failure to adopt a policy that disseminated information about the money follows the person program or about the EPD waiver, for example, that could be a certifiable class. That very well could be a certifiable subclass on remand. But what we have here is the allegation that the district doesn't do enough upon admission, that it doesn't have written transition plans, that it doesn't facilitate people getting the necessary documentation to apply for various waivers. We have just this amorphous concept of transition assistance, and the plaintiffs would like to say if we look at all of these, at these 14 different categories, we can find some plaintiffs that have been failed by the district. Our argument is you cannot do that. You need to have one common question that generates a common answer. And so if it were a class just of people who failed to get information or a class about people who did not receive the district's assistance in learning about the money follows the person program or the EPD waiver, then we'd be in a very different situation here. But what we do have – Just to clarify one thing, is your view that there just can't be any class here at all or that there should be – you can have class here. It just needs to be five or six or a dozen subclasses. I don't think the classes certified can stand. I believe it's been assessed there. Right, I got that. However, I think were this to go back down for subclasses, it could very well be that a class could be certified. That said, given that there are 14 different sets of transition assistance identified by the district court, it could well be that those individual subclasses don't all meet Rule 23's requirements of numerosity, for example, beyond that commonality or typicality. But I don't say that no class could ever be certified here. If the plaintiffs can come to the district court and say, this is the common question and this is the common answer, rather than just saying the common question is the failure to provide transition assistance, which is a wholly amorphous concept, that's what we are arguing cannot stand here. But on remand, I think subclasses could be appropriate. How should we approach the question of manifest error? How should we think about manifest error? Manifest error in the context of 23F, I think the best is this Court's notation in Johnson that manifest error is when the district court's decision is squarely foreclosed by existing precedent. We have here Walmart and DL. I cannot submit enough. DL is precisely the same type of class that was certified here, and this Court held it could not stand. This Court said the allegation that the district has failed to provide a free and appropriate public education to students when that actually broke down into four discreet failures upon the part of the district was not certifiable as a unitary class. It had been remanded for the determination of subclasses. So I think that in light of both Walmart and DL, we have manifest error. Isn't this a different type of claim than in DL in that for this Olmstead Act claim, you have to establish that there's an ineffective Olmstead Act plan, that that's an element, that's a common element? I actually, Judge Wilkins, think this is an easier case than in DL because, and for this reason, DL involved a statutory scheme. 42 U.S.C. 1415 clearly sets forth what the district's obligations are in very discreet statutory terms. And so you can look at that and see what is the district obligated to do, and is it doing that? Here, Olmstead is just a mandate to bring people into the community and to give in the most integrated setting as possible. It's not a checklist that you can then go through and determine whether or not the district is meeting those needs. In other words, it's a more amorphous type of a claim. And therefore, it's a more amorphous type of a class you would have. It's a more amorphous type of a claim, and that's why you need more of a concrete, common question. You can't just say Olmstead says do better, and I want the district to do better. What you need to say is the district has a policy or practice, or a failure to adopt a policy or practice, that, if remedied, would lead to relief for a class of plaintiffs. But here, what the plaintiffs are asking for is across-the-board improvements in a varied set of transition-assistant characteristics. And there's no reason to believe that all of the plaintiffs would benefit from all of these or that resolution of any of these questions would apply to all of the plaintiffs. Can I just clarify one other thing? You don't, at least at this stage, dispute that Olmstead applies to these plaintiffs' claims for transition assistance, including the particular ones that were spelled out by the district court? Do you accept, at least, that Olmstead, whether individually litigated or however litigated, could require all of these things in the abstract, maybe not from D.C.? I haven't delved deeply enough into each particular type of transition assistance that the plaintiffs are asking for here to determine whether Olmstead mandates all of them. What Olmstead mandates is that individuals be in the most inclusive setting possible. It very well is the case that the district needs to provide some means for individuals that are in nursing homes to get back into the community. And whether or not that can be satisfied just by the existence of the Money Follows the Person program and the EPD waiver, or whether it really includes, as part of an effective Olmstead plan, everything down to helping someone find a driver's license so that they can apply for various programs or apply for housing vouchers, that's a merits question. That's a question that may very well be litigated either through subclasses or individually. But you're not saying that granular level of merits is not the basis for objecting a class certification? Not at all, because Olmstead does not have a particular statutory set or regulatory set of boxes that you can check. It is developed through settlement agreements and other things. But it cannot be that just by identifying 14 different sets of transition assistance and saying some plaintiff may have not gotten one of these services, and as a result they may or may not be in a nursing home, that's not sufficient for purposes of class certification. So if there are no further questions, I would ask that this Court grant 23F review and vacate the class certification decision. And I do hope you'll give me a few seconds on rebuttal. Terrific. Thank you so much. Thank you. Good morning, Your Honors. I'm Marjorie Rifkin. I'm here on behalf of hundreds of respondents who are unnecessarily segregated in nursing facilities who contend that the District fails to provide effective transition assistance to connect them to existing community-based services in violation of its affirmative duty under Title II of the ADA and Olmstead v. Elsie as the Supreme Court interpreted Title II. How do you see the Americans with Disabilities Act or Rehab Act mandates in this context as operating differently from the IDEA and DL so that you have an appropriate class action here with the entire group, but you didn't in DL? How is this different? Is it something by the statutory mandate or something else? Well, it is one statutory provision in the Title II, and it's also the explicit congressional finding that unjustified institutionalization of people with disabilities is a recognized form of discrimination. How is that different from DL? They were asserting things that were, it was a different statute, but it was the same in terms of rights that people, services that people are entitled to in order to have equal educational opportunity. Both statutes place an affirmative duty on state and local governments. In that way, they're similar. In this case, we have one statutory provision, one legal claim here, one harm, unnecessary segregation of the class members, and we're seeking one system of transition assistance, whereas in DL, there were four separate provisions of the IDEA at issue, four separate harms, tracking of those. But wouldn't I say that's just a level of generality at which you've articulated your claim? You could have articulated a claim at the same level of generality that you have in DL and said there's just a failure to have an appropriate child find process, which breaks down into 14 components. Just as you said here, you don't have transition assistance, which breaks down into 14 components. How am I wrong? Well, I think that, as I believe the Court has said, at a different level of generality, there could be commonality issues with any class, depending on how you define it. But here we have one unitary statutory provision. We have a regulation that Congress authorized the Department of Justice to promulgate, and we have Supreme Court guidance that says to states and local governments, you have to provide services to people with disabilities in the most integrated settings according to their needs without a checklist. You had one statutory provision in Walmart. Yes. So I don't know how that's an answer, I think. In Walmart, I mean, I have to step back a second just to say that Judge Huvell absolutely followed both DL and Walmart. She made the necessary factual findings. She did a very rigorous analysis after two rounds of discovery, after two and a half years of development of the record, and she made the following three points, following in lockstep what the Walmart standard is. She conducted the rigorous analysis, and she found that plaintiffs had established their common contention  and effective system of transition assistance to provide access to community-based services in violation of its affirmative duty under the ADA, and this common contention can be resolved with a one-stroke injunction. But what specifically are they doing or not doing? They're not providing the basic three categories of transition assistance that people need in order to connect to the community-based services which exist in the district. So one category of assistance would be to provide information about what the community-based options are for people under the Medicaid long-term care system. Do you have any named plaintiff in this case that was injured by that failure? Yes. Who was that? I wasn't aware. I couldn't figure out who it was. They all seemed to know about their options. Well, once counsel explained the options and this far into the case, the named plaintiffs now know their options, but they're not getting the assistance. Sure, I got that argument. But then if you want an injunction that says provide information, what plaintiff is going to be benefited by that? Well, there's a named plaintiff. Okay. All of the named plaintiffs who are still in the nursing facilities, we have four now who are still in the nursing facilities, would benefit from updated information. The information changes. As you see in Judge Coupelle's decision, for example, there was a waiting list for the biggest program of Medicaid waiver community-based services, which no longer exists. The steps for how to access the services have just changed and been updated, which is periodically done. I mean, as I assume with any system that's undergoing some changes. Just so I can complete my thought. I'm sorry if I interrupted you. The second category of transition assistance that people need are assistance with applications for the benefits and services and for housing. People need applications in order to secure opportunities for housing. We're not asking the district to provide housing here, as we've made very clear, but they do need the applications and help with filling them out and documenting what's necessary to complete those applications. The third thing is they have to be assisted with actual. Let me pause on the second one. What exactly would that entail? That would entail applications for subsidized housing, for public housing. What would the assistance entail? It would entail helping people actually complete the applications and secure the documentation that they need, such as identification documents, benefit statements, and the like. And so they would be actually assisted in the third category with connecting to community-based providers who provide the Medicaid long-term care services in the district that our class members need and qualify for by virtue of the fact that they're in nursing facilities based on the same level of care criteria that the district applies to people seeking community-based long-term care Medicaid services. And what does connecting to mean in this context? Just describe more granularly how that would play out. It would involve going through the list of providers with a class member and helping them to make the connection, conveying the information that's necessary about the individual's needs to the agency, and then arranging for the district. Isn't that going to be different for different people? No, it's actually one process for one set of services that's not different for different people here, which is the other distinction, I would say, from D.L., where there were discrete stages in a process in D.L. where someone went from being found to identified to evaluated to served. And here we have people who need the services as a whole. It's a process. It doesn't matter where you enter and end in the process. You don't go sequentially from connecting to a community-based agency, filling out applications. It's one set of services that benefits all class members. In essence, you're arguing something akin to proper case management. In essence, yes, Your Honor. But it's a class-wide remedy here. We're seeking development and implementation of a system of transition assistance. That's actually how we first, in our first complaint, we framed the relief request. And then Judge Hufveld asked us to be more explicit in breaking down specifically what the components would look like. But obviously, as you well know, the precise terms of the remedy are not needed at the class certification stage. The district would be the one to shape the remedy in the first instance. But we have to be sure at this stage that there is a single remedy that would apply class-wide. I guess my instinct when I've read this is that, and maybe my questions reveal this, that there's some subclasses or more discrete, specific types of assistance that can form the basis for class-wide relief. But my instinct when I hear failure to provide effective transition services after I read D.L. and Walmart, but especially D.L., is that that's at a level of generality that's a little bit too broad under D.L. So that's my concern. Can you respond to that? Well, I think that we did specify, and Judge Hufveld followed several post-Walmart. Yeah. I read her transcripts, and she was clearly struggling with the same things we're struggling with, which is the level of generality and how specific it needs to get. And that's what I'm still struggling with there. And I think we're talking here about one indivisible remedy, one set of services that people would access at any point in their nursing facility tenure, so to speak. So it's a person. Let me just play it out. It's a person or persons who would help you, who would give you the information, help you fill out the form, get any documentation you need for the form, and help you call, email, mail, contact some provider. Is that basically it? Yes. And the district would carry on with its assessment of the level of service needs when the person is discharged. I mean, it seems to me defining it that way or getting more specific would be helpful to you in some sense, although I think probably I understand why you wouldn't want to do that. It also sounds a little more individualized, which is a problem when you're talking about class actions. But in any event, breaking it down like that seems more manageable than failure to provide effective transition services, which sounds very DL-like. That might not be a question. If I may, just to briefly highlight a couple of the facts that Judge Huvel delved into in reaching her decision that we established commonality here. Judge Huvel found commonality based on the fact that consistently 500 to 600 people in nursing facilities have expressed interest in community-based alternatives or direct preference for community-based alternatives. She also established that the nursing facilities are consistently in the district at 90-plus percent occupancy. The district has, over the past two years, I believe, reserved only 1% of its community-based Medicaid waiver slots for people in nursing facilities. 1% of 4,000, this year it's 4,387 slots, are reserved for our class members. In fact, Ms. Alleycan referenced the Money Follows the Person program, which is a program that the federal government has offered to states and local governments to incentivize transitioning people out of institutions such as nursing facilities. And the district held a lottery for nursing facility residents for that program nearly two years ago, but they only transitioned 16 of the 40 lottery winners who, by the way, had housing subsidies as part of the program. Within a nine-month period, only 16 were transitioned by the district. Can I ask you just a practical question? Yes. Why isn't it easier for you to litigate with people in subclasses, like they did in DL? You've got a list of services. It's still one single litigation in district court. Everybody gets to still be there. We just sort of identify who needs what. So why is that harder than doing this one-class action? I just don't know practically. I don't know why it's easier for them to have subclasses. I don't know why it's harder for you. I think practically speaking in this case, people would end up being in multiple subclasses simultaneously because if they needed updated information on an ongoing basis, for example, if they needed updated, they needed help with applications, but then there would be new applications coming online for housing opportunities that might not have been in place when they initially got the application. So it would be odd, I wouldn't say totally unmanageable, but difficult to manage, I would think. Remedy was, I mean, subclasses that were designed based on the remedy. So you'd be splitting up the different types of assistance into... It's also the harm. I mean, it's the harm and the remedy and the what are you missing that you need. The information is probably easily solved. So the bigger one is probably the assistance with the forms and then the contacting the providers, I guess. And it seems unlikely to me that all of them have the same issues on that, but you're telling me they do, right? There's just one or that we should think about it as one broad issue. Well, it's one set of services. The only question within which is the number of hours of the service that individuals would need. So D.L. said, and maybe I'm belaboring this, but D.L. said the problem was that it involved different policies and practices at different stages of the find and fake process. And that does sound, different stages of the process does sound like we're talking about here as well. And, again, the answer in D.L. was not say not now, not ever. The answer was to say get more specific, or at least that was a contemplated answer, I think, which proved to occur. I mean, to my mind, the difference there is that it's a sequential process. There are discrete stages in a sequential process, whereas here it's more fluid for the whole class. And we're seeking the class-wide relief. So it sounds like you're saying someone could be, it might look like at the beginning, I guess it keeps evolving, that is, at the beginning it may look like they need help with filling out forms, but then something could change quickly and then they would need someone to give them some updated information, or maybe they wouldn't need housing and then something would change and they wouldn't need housing. Their condition or external circumstances would change, and so people don't slot into stages as much as they did in D.L.? Exactly. Is that what you're saying? Exactly. Okay. Thank you. So Judge Kupfel recognized that this is among the quintessential B2 classes, where the district has refused to act to provide effective transition assistance in violation of its affirmative duty under the ADA to enable our class members to access those community-based long-term care services and avert the unnecessary segregation that they're currently subjected to. The judge followed not only Walmart and D.L. here, but she followed them and analyzed them carefully within the context of Olmstead v. L.C. She followed two particular post-Walmart Olmstead cases, that is Kenneth R. v. Hassan, Lane v. Kitzhaber, both of which involved elements of the kinds of assistance that we're speaking of here in order to give people with disabilities the opportunity to live in and or work in more integrated settings than the institutionalized system they were in. Actually, our class is more narrowly drawn than those classes because, for example, both Kenneth R. and another case, N.B. v. Jamos, involved both people in institutions and people in the community at risk of institutionalization. Here we don't have that issue. We have a very narrowly- I thought you did. I thought you had some of your named plaintiffs who were out and have concerns about reinstitutionalization. Well, now we do, but the class as defined does not include an at-risk population, which is what those- Those three are out. Actually, one just passed away, so the three are out, and they maintain their status as class representatives because of the inherently transitory nature of their situations, their conditions. I guess that might answer a question that I wanted to ask, which is just an elemental question of why do you need a class action at all as opposed to just bringing a multi-plaintiff action. We have between 500 and 2,000 in our class, as we estimate now, and Judge Huvel found in the statistics provided. It would be probably duplicative and wasteful of the district court's time to be individually litigating. What we've seen is there's some fluidity, so if we had a multi-plaintiff case, we'd be pretty consistently substituting and bringing individual actions that would have duplicative evidence. What we're talking about here is a class-wide system based on class-wide proof, aggregate proof of how people experience their nursing facility placement, what is their experience with access to the community-based services that exist, that they desperately need to access in order to move out, that they can't just pick up the phone themselves. Most of them don't have phones in the nursing facilities, but they can't pick up the phone and call a provider because they don't know the providers exist. They don't know about the services. So the end game, just give me a vision of what the end game is in terms of what you're seeking, a person or persons to whom each of the plaintiffs can go to say, hey, help me. Exactly. And that person then is charged with making sure your forms are in order and making the contact, in essence, a representative to assist you to get through the bureaucracy. Exactly. I mean, it would be a system so that it wasn't dependent upon one individual who had to be found in a government office. Right, but it's going to work better if there's, you know, each person has, okay, I'm responsible for these 100 or 50 or 25 or whatever. I doubt that's how it works, but it would be efficient if it worked that way. If there was a structure, an infrastructure built with procedures and protocols and, you know, so that things... And so what's happening now, this is getting maybe a merits question more, but what's happening now in your view on that kind of assistance? It's very ad hoc, politely speaking. It's very ad hoc. Very few people are getting any of the assistance. There is no proposed date or time when there might be another lottery for this. You've got a massive housing problem. We'll put that aside, but right on the back end, getting housing. There is an issue, but as Judge Huvel pointed out, the availability of housing, subsidized housing, for our class is very much in dispute. The public housing authority here actually has 600 fully wheelchair accessible public housing units, but people need to apply in order to get those units. There are a myriad of other subsidized housing developments around town, and the district itself, as Judge Huvel pointed out, controls 1,500 housing vouchers just within the human services agencies that are under the deputy mayor responsible also for overseeing the Medicaid long-term care program. So there's a lot of discretion and debate about the availability of housing, but it's no longer the case in the district that there is no accessible housing because there is. Thank you. Thank you. We'll give you several minutes for rebuttal. Thank you, Your Honor. I'll be brief because I know I went over my time initially. I just have three points. The first is 23B2 requires an indivisible remedy. Walmart says an indivisible injunction, and if you look at pages 33 and 34 of our brief, it lists the injunction that the plaintiff sought here. It is not indivisible. It is individualized. And then second, I didn't have a chance to fully respond to your question, Judge Kavanaugh, about why 23F review. 23F review is obviously appropriate here because of the manifest error, but also 23F exists to allow an appellate court to come in and cut short an erroneous class certification decision before it goes, like it did in DL, to dispositive briefing, to liability, and ultimately to a remedy phase, only to then come up here and have the circuit decision reverse the class certification decision below. Is that a manifest error argument? No, that's a 23F. That's a variety of 23F review. 23F exists to give this court discretion to come in and cut short an erroneous class certification decision. That could be alleged in any case, right? Well, it exists in any case, but I think it's uniquely important here because we have a vulnerable population. It's an elderly population, and so we need to have this case resolved sooner rather than later. If ultimately the district is going to be held to be liable on any certain set of issues and remedies going to order. I guess the normal rule is that if you want efficiency in litigation, you don't have interlocutory review. Except for in class actions where otherwise the case. No, I don't think it's just in class actions. I think the reason we have such narrow categories for interlocutory review is that we recognize even in class actions, the most efficient course is to have litigation proceed and deal with things at the end unless there are truly exceptional reasons. So it can't just be it's a class action, and it can't just be we'd like this to be over sooner because everybody's going to say the same thing. Of course, this is assuming manifest error. I'm just saying, I believe we have manifest error. Well, if it's manifest error, we don't need a vulnerable population. It doesn't matter, right? Well, Rule 23, when it was enacted in 1998, was to make a departure from the general rule against interlocutory rulings because in the classification context, it is so important. And I think that's especially so here because of the vulnerable population and because of the judicial resources that could be expended. Did you argue vulnerable population in your brief? We just talked about the conserving party and judicial resources. And that argument struck me as something that, again, is going to apply in every class action. It is a reason why the rule was changed to allow for interlocutory review in 23F, but I think that you can take in your discretion notice of when a case is going to take significant resources and more resources, like a class here that is broadly defined and that is seeking all sorts of different types of relief. I guess I'm not sure what point there is to having the death knell category. If, in fact, we're going to say, even if it's not a death knell, if it's more efficient, we'll do it. It just seems to me we're opening. This Court has said, you know, prior to second precedent, that these are very narrow exacting categories, and it will be very much the exception when review is granted. And so it sounds to me like having a category of, well, it would be really expensive and take a lot of resources is not consistent with our precedent. To be sure, Judge Millett, I am not saying that there needs to be a category for expensive or big cases. I am merely saying that Rule 23F was put into place to allow for circuit courts to take immediate review of these cases because they are big, because they are pressing. You should stick with manifest error. That's the reason why we have this is what you're saying. I started this with manifest error, we believe, is met here. But I'm saying manifest error requires exercise of your discretion over 23F review to vacate the classification decision. Of course, just to be, I mean, that's our case law. The language of the rule actually doesn't say anything about that, but I'll put that aside for now. Anyway, your third point is? Well, so my third point is just about the nature of the subclasses and how it could be transient or fluid. That's the same as the case in DL. DL wasn't you have just a discrete failure to be found, you have a discrete failure to get an IEP, you have a discrete failure to get services. The child moves through the system in order to get a free and appropriate public education and at different stages will need different of those services. Very much the same here, that if there were subclasses that were certified, the first subclass could be for the provision of information about available programs. A second subclass would be for people that need housing to get information about available public housing options in the district. The subclasses could be structured much as they were in DL to allow for the discrete characteristics. Is that something you want or is that something you're going to fight if it went back on that? As I said, I don't believe you could just check a box and have subclasses for all 14 categories of transition assistance in the district court's opinion. I think that there may very well be some subclasses that can be certified here. If this goes back down from that, parties will have to litigate what is most productive. How about a subclass that says I need, there's a group of people who needs help filling out the form and getting documentation. I'm assuming there's a form and getting documentation. That, I suppose, could be a subclass. However, I think it needs to be reviewed by the district court. The parties would need to put submissions as to what kind of forms. Is it that, I mean, the money follows the person program exists just for this population. Plaintiff's counsel talks about how the EPD waiver is only 1% of slots. That's because the EPD waiver. I just want to make sure this subclasses thing is not a bait and switch that we're thinking about. I'm not putting that on you. I'm just saying, I don't want to rely on ODL and there can be subclasses and then find out, oh, that was actually not really realistic either. We think that in light of DL, subclasses are an option here. Whether they play out on the ground, depending on how plaintiffs choose to define them and how the district thinks they should be set up. That is a question that will need to be litigated in the district court. That's what this court said in DL. Did you argue below for subclasses? Your Honor, I do believe the issue of subclasses came up and plaintiffs were the ones that didn't want subclasses. Did you say that there should be subclasses and here's what they should be and the district court said, no, I'm going to do one big class? I do not remember whether we affirmatively argued for subclasses, but I know it was discussed at length at the class certification hearing and we represented that the plaintiffs were the ones who were opposing subclasses. And so were this to go back down, to be sure, the parties would litigate over what the content of those subclasses would be. But I am representing to you now, we would not dispute the propriety of subclasses if this were to go back down for reconsideration. And just to play this out further, there could be a subclass of we need help. We're a group of people who need help contacting the relevant people who can provide us the services. If it can meet the Rule 23 requirements of numerosity and all of that, then yes. And I also want to just put a little bit of a... And then the question becomes to me, how is that really different from what's going to transpire in this class? Well, I think what's different is that if you look at the transition assistance services they're looking for, it's not just I need help filling out paperwork. It's everything that runs the gamut from expanding the size of the MFP program, effectively, more effectively using EPD waiver slots. What's been asked for here is broad and it's amorphous. If we can pin this down to six features... I think I agree with you. Anything that says do something more effectively is too amorphous for me. It's not paperwork-backed certification. But if we can go back down and say, okay, we need to have, upon admission, review of a transition plan and then following up every so month. That's one of the categories of transition assistance that the district court identified and the plaintiffs want. That could be a subclass. But something that just says do better and do better in these multivaried ways. Help people that need housing get housing. Help people that don't have driver's licenses get licenses so they can apply to different programs. I assume you're going to defend on the merits, too, and argue that what's going on now meets the legal requirements. Absolutely, Your Honor. There are social workers in the nursing homes which are not district-owned. They're privately run. But there are social workers there to assist with transition planning. And then the district has social workers itself within the Office of Aging and Disability Rights Center which provide these transition services that assist people with the Money Follows the Person program, with getting on the EPD waiver. We have a program in place. The plaintiffs would rather us do it more effectively. But every government program is subject to that. I'm getting way ahead of the case, but I'm just curious. To those people who work for D.C., do they make contact with the people in the nursing facilities or are they just there as kind of passive recipients of clients? My understanding is that they are going out into the community and helping people in assisting with transitions and, indeed, have assisted named plaintiffs here. So since 2010, there have been 412 nursing home facility residents discharged into the community, and I believe that 221 of them had been there for 90 days or over, which is the class population that we're talking about here. These fact things, which I suspect the other side might have a different view on, are not sort of relevant to our decision at this juncture. I asked you, so you're permitted to answer because I asked you. They're relevant for me to know about. There are merits determinations. And, yes, ultimately, if this goes back down either on subclasses or if this goes back down now, we have defenses on the merits for why the district has an effective system of transition assistance and why it is working to transition people. And the question of whether transition services that they seek, and all 14 don't have to qualify. I think the case law is one class-worthy issue to have a class action. And so the question of whether what they seek is more a unified process than D.L. was and more unitary, or people are sort of in flux between these standards, is sort of, I guess, a factual question. Is that correct? I mean, you say it's like stages like D.L. They say no, and the district courts seem to conclude that transition services, at least as the ones that were identified by the district court, those were a bit more of a compact idea. And I don't know what expertise we would have to decide that now. I don't know if it's a factual question. I think this court has to say D.L. held that when you have discrete, multiple services that you're challenging. I know that's the point. You say multiple. They say it's unitary. But I think that this court, it's not a factual determination. This court only needs to look at the injunction they sought, which is reproduced in pages 33 and 34 of our brief. And the transition assistance, I think it was 1246 to 1248, of the district court's opinion, where they list all of these different factors. And this court can say, how does that compare to D.L.? In D.L. we were looking at four discrete categories, and that wasn't sufficient for commonality. So what do we do when we have 14 multivariate characteristics that they're asking the district to do better on? So I think for that reason, at a minimum, this class needs to go back for a determination of subclasses before it can proceed to expert discovery, summary judgment briefing, liability trial, and ultimately, if liability is found, a determination of remedy. So for that reason, this court should exercise its 23-F review now, and on the merits, it should vacate the class certification decision. Thank you. Thanks to both sides for a well-argued case. The case is submitted.
judges: Kavanaugh, Millett, Wilkins